UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

DAWN LENGRAND,
and others similarly situated,

  Plaintiffs,

v.                 Civil Action No.: 3:11-CV-333

WELLPOINT INC.,
  Defendant.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONSENT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

  Plaintiff, Dawn Lengrand (hereinafter referred to as "Plaintiff" or "Class Representative") submits this memorandum in support of the Consent Motion for Preliminary Approval of Class Action Settlement Agreement.

### I. INTRODUCTION

  On July 29, 2011, Ms. Lengrand filed an Amended Complaint alleging the causes of action in the above-captioned class action (the "Lawsuit"), asserting class claims against WellPoint under the Fair Credit Reporting Act (hereinafter referred to as the "FCRA"), 15 U.S.C. § 1681, et seq.

  After extensive arms-length negotiations, the Parties entered into a Stipulation of Settlement (the "Agreement"). A copy of the Agreement is attached as **Exhibit 1**. The parties are circulating for original signature.

1

Pursuant to FED. R. CIV. P. 23, the Parties now seek preliminary approval of the proposed class action settlement. Specifically, the Parties request that the Court preliminarily certify the proposed class and the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order"), attached as **Exhibit 2.** (All capitalized terms used herein have the meanings defined herein or in the Agreement).

## II. FACTS AND PROCEDURAL HISTORY

1. **CLASS ALLEGATIONS** – Plaintiff filed this class action against WellPoint, Inc. ("WellPoint") asserting class claims under the FCRA. Specifically, Plaintiff alleged that WellPoint violated the FCRA, 15 U.S.C. § 1692b, by (1) failing to provide the proper FCRA disclosures to applicants for employment and current employees prior to obtaining a background check; and (2) failing to provide applicants and employees subject to a background check an opportunity to dispute the background check results before discontinuing their application process or employment with WellPoint.

2. **SETTLEMENT** – In an attempt to settle the Lawsuit, the Parties participated in extensive settlement discussions and mediated the case on December 14, 2011, before Magistrate Judge Dennis W. Dohnal, at which time the parties agreed to settle the case in principle and entered a memorandum of understanding that memorialized the most basic terms of the settlement agreement. After the mediation, the Parties continued their discussion of the detailed terms of the settlement to be further negotiated and agreed upon by the Parties. The Parties had numerous telephone conferences and exchanged emails regarding settlement efforts. Through these mediation sessions, telephone conferences, and emails, the Parties reached a proposed class settlement, the terms of which are memorialized in the Agreement, attached as **Exhibit 1**.

3. **CAFA NOTICES** – In compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, within 10 days of this filing, WellPoint will serve written notice of the proposed class settlement upon the United States Attorney General and the appropriate State Attorneys General.

4. **REQUEST FOR ENTRY OF PRELIMINARY APPROVAL ORDER** – The Parties now seek entry of the proposed Preliminary Approval Order, attached as **Exhibit 2**, preliminarily certifying the proposed class and approving the proposed class settlement.

## II. PROPOSED CLASS ACTION SETTLEMENT TERMS

The significant terms of the proposed settlement are the following:

5. **CERTIFICATION OF A FED. R. CIV. P. 23(b)(3) SETTLEMENT CLASS**

For settlement purposes only, the Parties seek preliminary certification of a FED. R. CIV. P. 23(b)(3) class:

> The Preliminary Settlement Class consists of Consumers residing in the United States (a) who applied for employment with WellPoint, and (b) during the application process, WellPoint procured a criminal background report or other consumer report (c) where the consumer report contained a criminal public record or credit item that would disqualify the person from such position under Defendant's written hiring policies, (d) which the consumer was not them approved or hired for the position, (e) and to whom Defendant did not provide a copy of the consumer report and other disclosures stated at 15 U.S.C. § 1681b(b)(3)(1)(ii) at least five business days before the date the employment decision is first noted in Defendant's records.

Exhibit 1, Agreement ¶ 2,1.

6. **CLASS REPRESENTATIVE AND CLASS COUNSEL APPOINTMENT**

For settlement purposes, Dawn Lengrand, is appointed as the Class Representative on behalf of the Class Members and Mr. Leonard A. Bennett, Mr. Dale

3

Wood Pittman and Ms. Susan M. Rotkis are appointed as counsel for the Class Members ("Class Counsel").

7. **THIRD-PARTY CLASS ACTION ADMINISTRATOR**

Counsel will hire a third party class administrator (the "Class Administrator") to oversee the administration of the settlement and the notification to Class Members. WellPoint shall be responsible for all costs and expense for the Class Administrator. The Class Administrator will be responsible for mailing the approved class action notices and claim forms to the Class Members. A separate checking account (hereafter "the Settlement Account") will be established by the Class Administrator for purposes of depositing the settlement funds for the sole purpose of issuing settlement checks.

The settlement checks shall issue from the Settlement Account only and the Class Administrator will verify that the settlement checks were mailed. Id. at ¶ 8.

8. **MAILED NOTICE**

Before sending the written notices required by this subparagraph, WellPoint, through the Class Administrator, shall research and update the Class Members' addresses. WellPoint will produce the last known address for the Class Members through this address updating process. After completing the address updating process, in a manner prescribed in the ¶ 4.2 of the Agreement shall send via First Class U.S. mail the Court approved written notice of the settlement to each Class Member at his or her last known valid address. If any notice is returned with a new address, the notice will be remailed by the Class Administrator to the new address. The notice shall be in substantially the form attached as **Exhibit 3**. The Class Administrator shall send the appropriate class notice to each Class Member.

9. **SETTLEMENT PAYMENTS**

**WellPoint shall pay $42,050.00 for the Class common fund. With an estimated 191 class members, the net cash recovery will be approximately $150.00 per person.**

The Class Administrator will mail a settlement check to each Class Member who does not exclude himself or herself from the Class Action Settlement no later than 50 days after the Court's entry of the Order of Final Approval of Class Action Settlement.

10. *CY PRES* **AWARD**

To the extent there are funds remaining in the Settlement Fund after the opt-out process, those funds shall be applied to the cost of the claims administrator and any remaining funds shall be distributed to a *cy pres* beneficiary selected by the parties and subject to Court approval. Any disputes will be decided by a Magistrate Judge.

11. **CLASS COUNSEL'S FEES, COSTS, AND EXPENSES**

In addition, WellPoint will pay $8,550.00 for attorneys' fees and litigation costs, and expenses, which constitutes 20.3% of the total settlement cash value, excluding costs of administration and notice. WellPoint will not object to the fee, cost, and expense application.

12. **EXCLUSIONS AND OBJECTIONS**

Any Class Member who desires to be excluded from the class must send a written request for exclusion to the Class Administrator with a postmark date no later than 90 days after the date on which the Class Administrator mailed the notice. The

Class Administrator shall send the notice to Class Members within 60 days after the Court's entry of the Order of Preliminary Approval of Class Action Settlement. The Class Administrator shall provide a list of the names of each Class Member who submitted a timely exclusion to counsel for WellPoint and Class Counsel after the deadline passes. A copy of this list will be filed with the Court, along with the Parties' Joint Motion for Final Approval of Class Action Settlement.

## IV. LAW AND ARGUMENT SUMMARY

### *A. The FED. R. CIV. P. 23(a) Requirements are Satisfied*

"Rule 23(a) sets forth four basic requirements for any class action - numerosity, commonality, typicality, and adequacy." *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D. S.C. 1992), *aff'd* 6 F.3d 177 (4th Cir. 1993). This Lawsuit satisfies the FED. R. CIV. P. 23(a) prerequisites. Each FED. R. CIV. P. 23(a) factor is considered in turn below.

1.  **Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)); *see also Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F.Supp. 1404, 1407-08 (D. Md. 1984) (stating that "[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical"). However, where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th

6

Cir. 1967) (18 class members sufficient).

The numerosity requirement is met here. There are approximately 191 Class Members, including the named plaintiff as class representative. Joinder of this many individuals is neither possible nor practical, the first prong of the certification test has been met.

**2.    Commonality**

"Rule 23(a)(2) requires that the court find that 'that there are questions of law or fact common to the class.'" *Central Wesleyan*, 143 F.R.D. at 636. "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Communications Workers of America, AFL-CIO,* 212 F.R.D. 320, 322 (E.D. Va. 2003).

The commonality requirement is met here. The putative class claims stem from plaintiff's allegations that the forms used by WellPoint in its background check process fail to comply with the FCRA. All members of the class suffered the same FCRA violation by WellPoint. Therefore, the putative class claims are legally and factually identical and the commonality prong of Rule 23 is satisfied.

**3.    Typicality**

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Systems, Inc.,* 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert

claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Virginia Elec. and Power Co.* 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322.

The typicality requirement is also met here. Plaintiff alleges that WellPoint violated the FCRA by failing to provide the appropriate disclosures prior to obtaining a background check and by leaving her a voicemail stating WellPoint was discontinuing rescinding her job offer based on the a HireRight background check without providing her an opportunity to dispute the consumer report. In fact, WellPoint failed to provide the written disclosures required under the FCRA including a copy of her consumer report, a written summary of her rights, a sufficient amount of time to review the report and correct any inaccuracies, all before taking an adverse action. Plaintiff is one of 191 individuals who were treated in the same way as part of WellPoint's standard hiring practice.

4.  **Adequacy of Representation**

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys,* 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher,* 217 F.R.D. at 212, *citing Broussard v. Meineke Disc. Muffler Shops,* 155 F.3d 331, 338 (4th Cir. 1998).

The adequacy of representation requirement is met here. Plaintiff understands the obligations of a class representative, has adequately represented the interests of the putative class, and has retained experienced counsel, as indicated by **Exhibit 4** (Affidavit of Class Counsel), which set forth the qualifications of Class Counsel. Plaintiff has no antagonistic or conflicting interests with the Class Members. Both Plaintiff and the Class Members seek money damages for WellPoint's alleged unlawful actions. Considering the identity of claims, there is no potential for conflicting interests in this action. Accordingly, the class is adequately represented to meet the requirements under Rule 23.

### B. The Fed. R. Civ. P. 23(b) Requirements are Satisfied

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

#### 1. The Class Should Be Certified under Rule 23(b)(3)

In order to certify a Fed. R. Civ. P. 23(b)(3) class, the court must find that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Preliminary certification of the proposed class is appropriate under Rule 23(b)(3). The predominance and superiority factors are addressed below.

##### a. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*

9

*Products*, 521 U.S. at 623. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986).

A common nucleus of facts and potential legal remedies dominates this litigation. The claims of the Class Representative and Class Members are identical: WellPoint allegedly failed to provide the proper FCRA disclosures after using a background check to make an employment decision and allegedly failed to provide an opportunity to dispute the background check results prior to taking adverse action and rescinding an offer of employment.

  b. *<u>Superiority</u>*

"The superiority inquiry tests whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Fisher*, 217 F.R.D. at 213. When determining whether a class action is superior, the Court should consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or

10

>   undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Jeffreys,* 212 F.R.D. at 323.

The class action procedure is the superior mechanism for dispute resolution in this matter. The alternative mechanism, permitting individual lawsuits for a small statutory penalty, would be costly and duplicative. Through the class action procedure, these common claims can be brought in one proceeding, thereby eliminating unnecessary duplication, preserving limited judicial resources, and achieving economies of time, effort, and expense.

### *C. The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate*

Federal jurisprudence strongly favors resolution of class actions through settlement. *See San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999); *see also* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Rule 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during the settlement negotiations. *See Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W. Va. 2002) (citing *In re JiffyLube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)). The Court may approve a settlement only after a hearing and on finding that it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Approval of a

11

class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class- action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991)).

The Fourth Circuit employs a bifurcated analysis for Rule 23(e) approval, mandating that the Court separately consider the fairness of the settlement from its adequacy. *See In re Jiffy Lube*, 927 F.2d at 158-59. In this case, each set of factors weighs in favor of approving the Settlement.

*1. Fairness*

When evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *In re Jiffy* Lube, 927 F.2d at 159. The fairness inquiry ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id.*

These factors point persuasively to the conclusion that the settlement here is fair.

*a. The Posture of the Case at the Time Settlement Was Proposed*

WellPoint pled several defenses to the class claims and the Parties agreed to settle only after propounding merits-related discovery. The Parties reached the Proposed Settlement after sufficient discovery had been completed, both formally and informally.

12

The parties have exchanged sufficient information to allow a comprehensive evaluation of plaintiff's claims. The legal and factual issues presented in this case are vetted and the matter is ripe for settlement.

### b. *The Extent of Discovery that Had Been Conducted*

As stated above, the Parties conducted both informal and formal discovery prior to negotiating settlement. Although not protracted or voluminous, the quality of the discovery of this case enabled the parties to determine the relative size of the class and the objective nature of the evidence related to the claims, which favors approval of the Settlement. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 830 (E.D. N.C. 1994). The Parties have exchanged sufficient information to make an informed decision about settlement.

### c. *The Circumstances Surrounding the Negotiations*

As stated previously, the Parties have engaged in quality settlement discussions and mediated with the assistance of Judge Dohnal. Through these discussions and mediation sessions, the Parties reached the proposed class settlement. The Parties did not begin to negotiate attorneys' fees before reaching the principal settlement points. Considering the risks associated with litigating this matter, WellPoint's defenses to plaintiff's claims, the meaningful settlement discussions, and a federal magistrate's approval of the proposed compromise, the proposed settlement is fair and appropriate for approval. *See S. Carolina Nat'l Bank*, 139 F.R.D. at 339 (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law)

### d. *The Experience and Views Of Class Counsel*

The settlement was negotiated at arms-length by experienced and capable Class Counsel, who now recommend its approval. As detailed in Class Counsel's affidavit attached as **Exhibit 4**, Class Counsel are experienced FCRA class action lawyers. Given that experience and expertise, Class Counsel are qualified to assess the prospects of the case and to negotiate a favorable resolution for the class. *See e.g. Soutter v. Equifax Info. Services, LLC*, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel [Leonard Bennett] is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases.")

### 2. *Adequacy*

In assessing the adequacy of the settlement, the Court should look to the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159.

While it is too early to address the last factor, *i.e.*, the reaction of the Class Members to the proposed settlement, application of the other relevant factors confirms that the proposed settlement is adequate and should be preliminarily approved.

### a. *The Relative Strength of the Plaintiff's Case and the Difficulty in Proving Liability*

As noted, WellPoint has disputed plaintiff's claims since the inception of this case and has raised a number of defenses to Plaintiff's class claims. Because Plaintiff limited the class claims only to statutory and punitive damages, any recovery for the class must be predicated on a finding that WellPoint willfully violated the FCRA. *See* 15 U.S.C. §1681n(a). Although a reckless violation of the FCRA satisfies the willfulness prerequisite for statutory and punitive damages under *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), Plaintiff is still faced with the burden of proving that Defendant's conduct was reckless. In order to ensure its applicant background check process complied with all federal and state laws, WellPoint solicited proposals to outsource its applicant background check process to a third party vendor that warranted and guaranteed that its services would comply with all federal, state and local laws. In order for the class to recover statutory and punitive damages, Plaintiff has the burden of proving that notwithstanding WellPoint's efforts to comply with the FCRA, any violations of the statute were nonetheless willful.

Considering the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is
adequate.

### b. The Anticipated Duration and Expense of Additional Litigation

Aside from the potential that either side will lose at trial, the Parties anticipate incurring substantial additional costs in pursuing this litigation further. The level of additional costs would significantly increase as Plaintiff began her preparations for the certification argument. Thus, the likelihood of substantial future

15

costs favors approving the proposed settlement. *See Horton*, 855 F. Supp. at 833.

### *c. The Solvency of the Defendant and the Likelihood of Recovery*

WellPoint is a viable company and will be able to satisfy a judgment; however, by settling the case, WellPoint is able to control its exposure to an adverse ruling and award of damages.

### *D. The Proposed Class Notice is the Best Notice Practicable under the Circumstances*

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Pursuant to FED. R. CIV. P. 23(c)(2)(B), "[t]he notice [for Fed. R. Civ. P. 23(b)(3) classes] must concisely and clearly state in plain, easily understood language: the nature of the action[;] the definition of the class certified[;] the class claims, issues, or defenses[;] that a class member may enter an appearance through counsel if the member so desires[;] that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded[;] and the binding effect of a class judgment on class members under Rule 23(c)(3)." Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement . . . ."

Individual notice is being provided to each Class Member. Before sending the written notice, WellPoint will confirm and, if necessary, update the addresses for the Class Members to ensure the last known address for each Class Member is used. The proposed notice, attached as **Exhibits 3**, is appropriate and complies with both FED. R. CIV. P. 23(c)(2)(B) and (e)(1)(B). The notice contains all of the required Rule 23 information and properly advise the Class Members of their rights. Additionally, the Class Administrator will maintain a toll-free number and Internet website that

16

will (1) enable Class Members to access and download the Class Notice and other pertinent documents; (2) enable Class Members to download an opt-out form; (3) enable Subclass 1 class members to submit their claim online; (4) provide a list of critical dates and deadlines in the settlement process; and (5) provide relevant updates and information with respect to the settlement and approval process. The proposed method for notifying the Class Members thus satisfies both Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## V. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests the Court grant the consent motion and enter the Preliminary Approval Order, attached as **Exhibit 2**:

(1) preliminarily approving a proposed class settlement,

(2) scheduling a fairness hearing,

(3) certifying settlement classes for purposes of the proposed class settlement,

(4) appointing class counsel,

(5) approving the form and manner of notice proposed to be sent to all members of the settlement classes.

Respectfully Submitted

_____/s/_____
Susan M. Rotkis
VSB # 40693
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd. Suite 1A
Newport News VA 23601
757-930-3660
757-930-3662
srotkis@clalegal.com

        Leonard Anthony Bennett
        VSB #37523
        Consumer Litigation Associates, P.C.
        763 J. Clyde Morris Blvd. Suite 1A
        Newport News VA 23601
        757-930-3660
        757-930-3662
        lenbennett@clalegal.com


        Dale Wood Pittman
        The Law Offices of Dale W. Pittman
        112-A West Tabb Street
        Petersburg, VA 23803

        *Counsel for Plaintiff*


# CERTIFICATE OF SERVICE

On this 11th day of July, 2012, I certify that I have electronically filed the foregoing pleading in the CM/ECF system, which shall send a Notice of Electronic Filing (NEF) to the following:

        Taron K. Murakami
        Seyfarth Shaw LLP
        975 F Street, NW
        Washington, DC 20004-1454

        Christopher James DeGroff
        Seyfarth Shaw LLP (IL-NA)
        131 S Dearborn St
        Suite 2400
        Chicago, IL 60603-5577

        Pamela Q. Devata
        Seyfarth Shaw LLP (IL-NA)
        131 S Dearborn St
        Suite 2400
        Chicago, IL 60603-5577

        Counsel for the Defendant

_____/s/_____
Susan M. Rotkis VSB 40693
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd. Suite 1A
Newport News VA 23601

Counsel for the Class